# EXHIBIT A

## THEIA GROUP, INCORPORATED

## SECURED NOTE PURCHASE AGREEMENT

This SECURED NOTE PURCHASE AGREEMENT (this "Agreement"), dated as of February 18, 2020  (the "Effective Date"), is among Theia Group, Incorporated (the "Issuer"), and Robert K. Chinn (the "Purchaser"), as purchaser.

In consideration of the respective representations, warranties, covenants and conditions contained in this Agreement, the parties to this Agreement agree as follows:

1.    Purchase and Sale.  Subject to the terms and conditions and in reliance upon the representations and warranties herein set forth, the Issuer agrees to sell to the Purchaser, and the Purchaser agrees to purchase from the Issuer, at a purchase price of 100% of the principal amount thereof, a convertible promissory note substantially in the form attached hereto as Appendix A in the principal amount set forth opposite the Purchaser's name on Schedule I hereto (the "Note"), which Note is convertible into the Issuer's common stock, par value $0.001 per share on the terms and conditions set forth therein (such common stock upon conversion, together with the Note, the "Securities").

2.    Closing.  The purchase and sale of Securities shall take place at such time and place as the Issuer and the Purchaser mutually agree upon, orally or in writing (the "Closing").  At the Closing, the Issuer shall deliver to the Purchaser the Note against (x) payment of the purchase price therefor by wire transfer of immediately available funds to the bank and account designated by the Issuer and (y) delivery of a counterpart signature page to this Agreement.

3.    Purchaser Representations and Warranties.  In connection with the purchase of the Securities, the Purchaser represents and warrants to the Issuer the following:

(a)    The Purchaser is aware of the Issuer's business affairs and has acquired sufficient information about the Issuer to reach an informed and knowledgeable decision to acquire the Securities (hereafter, the "Diligence").  The Purchaser is purchasing the Securities for investment for the Purchaser's own account only and not with a view to, or for resale in connection with, any "distribution" thereof within the meaning of the Securities Act of 1933, as amended (the "Securities Act").

(b)    The Purchaser is (i) an "accredited investor" within the meaning of Rule 501 of Regulation D promulgated under the Securities Act and (ii) aware that the sale of the Securities to it is being made in reliance on a private placement exemption from registration under the Securities Act.

(c)    The Purchaser acknowledges that it is not purchasing the Securities as a result of any form of general solicitation or general advertising within the meaning of Rule 502 under the Securities Act that would result in the offer and sale of the Securities requiring registration or in any manner involving a public offering within the meaning of Section 4(a)(2) of the Securities Act.

(d)     The Purchaser understands that the Securities have not been registered under the Securities Act by reason of a specific exemption therefrom, which exemption depends upon, among other things, the bona fide nature of the Purchaser's investment intent as expressed herein. In this connection, the Purchaser understands that, in view of the Securities and Exchange Commission, the statutory basis for such exemption may not be present if the Purchaser's representations meant that the Purchaser's present intention was to hold the Securities for a minimum capital gains period under applicable tax statutes, for a deferred sale, for a market rise, for a sale if the market does not rise, or for a year or any other fixed period in the future.

(e)     The Purchaser further acknowledges and understands that the Securities must be held indefinitely unless they are subsequently registered under the Securities Act or an exemption from such registration is available.  The Purchaser further acknowledges and understands that the Issuer is under no obligation to register the Securities.  The Purchaser understands that the Securities will be imprinted with a legend which prohibits the transfer of the Securities unless they are registered or such registration is not required in the written opinion of counsel satisfactory to the Issuer.

(f)     The Purchaser has reviewed this Agreement in its entirety, has had an opportunity to obtain the advice of its own counsel prior to executing this Agreement and fully understands all provisions of this Agreement.  The Purchaser acknowledges that it has (i) conducted its own investigation and credit analysis of the Issuer and the terms of the Securities and has relied exclusively on such investigation and analysis in making its decision to invest in the Securities, independently and without reliance on any other purchaser of promissory notes issued by the Issuer (each, an "Other Purchaser"), (ii) had access to such financial and other information as it deems necessary to make its decision to purchase the Securities independently and without reliance on any Other Purchaser, and (iii) been offered the opportunity to ask questions of the Issuer and received answers thereto, as it deemed necessary in connection with the decision to purchase the Securities.

(g)     By purchasing the Securities, the Purchaser acknowledges that the Issuer and its agents and advisers may each collect, use and disclose its name and other specified personally identifiable information ("Information"), including the amount of securities that the Purchaser has purchased for purposes of meeting legal, regulatory and audit requirements and as otherwise permitted or required by law or regulation.  The Purchaser consents to the disclosure of such Information to the extent, and only to the extent, required by legal, regulatory and audit requirements of the Issuer.

(h)     The Purchaser acknowledges that where required by applicable securities laws, regulations or rules, it will execute, deliver and file such reports, undertakings and other documents relating to its purchase of the Securities as may be required by such laws, regulations and rules, or assist the Issuer in obtaining and filing such reports, undertakings and other documents.

(i)     The Purchaser understands that the Issuer and its counsel will rely upon the truth and accuracy of the foregoing representations and acknowledgements.

4.   <u>Representations and Warranties of the Issuer</u>.  In connection with the purchase of the Securities, the Issuer represents and warrants to the Purchaser the following:

(a)   The bylaws and certificate of incorporation of the Issuer are found in <u>Appendix B</u> attached hereto, and have not been amended as of the Effective Date.

(b)   The Issuer's books and records have been properly maintained according to law and accurately reflect, in accordance with generally accepted accounting principles and standards, all of the transactions entered into by the Issuer or to which it is a party.

(c)   There have been no applications, steps, proceedings or orders for the deregistration, dissolution, winding up, liquidation, judicial management, lien, Judgement or administration of the Issuer, whether provisional or final.

(d)   The Issuer has complied with all legislation, enactments, proclamations, ordinances, bylaws and regulations which affect or apply to it of which it has knowledge.

(e)   The Issuer has all such licenses, consents, permits and other authorities prescribed by law for the conduct of its business in the manner in which it is presently conducted as of the Effective Date, and the state in which it presently is composed. The Issuer does not represent what licenses, consents, permits or other approvals may or may not be required for it to conduct any specific planned or future business activities.

(f)   No special rights or preferences have been granted to any of the Issuer's shareholders.

(g)   The Issuer is not liable, whether contingently or otherwise and whether as surety, co-principal debtor, guarantor or indemnitor, for the liabilities of any third party.

(h)   No express or implied or tacit warranties have been given by the Issuer to third parties.

(i)   No person is entitled to participate in or to obtain a commission on the profits or dividends of the Issuer, except as a shareholder.

(j)   The Issuer is not in default of any material obligation.

(k)   The Issuer is not engaged in any litigation, arbitration or criminal proceedings. The Issuer is not aware of any facts, matters or circumstances which may give rise to any litigation, income tax appeals and arbitration or criminal proceedings.

(l)   The Issuer has no tax liabilities other than normal-course taxes which may become due to state or federal authorities upon filing of normal-course reports.

(m)     No queries have been addressed to the Issuer by any tax official nor has the Issuer lodged any tax objections.

(n)     The right of the Issuer to use or exploit any intellectual property which the Issuer requires to conduct its business is not restricted by, nor is dependent upon any license, other than those normal licenses necessary to be obtained in the normal course of its business.

(o)     All the patents, patent applications, trademark applications, logos, defensive names and designs belonging to or used by the Issuer are valid, of full force and effect and unencumbered. The Issuer cannot, however, represent whether any particular submission to the US Patent and Trademark Office, or any other similar non-US regulatory authority, which is in process will be granted in whole or in part. All of the patent applications, trademark applications, logos, defensive names and designs belonging to or used by the Issuer have been applied for registration with the appropriate authority in its name either as the owner or lawful user.

(p)     There is no infringement or suspected infringement of any of the patents, patent applications, trademarks, software or databases belonging to or used by the Issuer.

(q)     This transaction does not constitute a breach of any of the Issuer's contractual obligations, nor will it entitle any person to terminate or vary the terms of any contract to which the Issuer is a party.

(r)     In respect of all disclosures made to the Purchaser in the conduct of its Diligence conducted prior to the Effective Date, to the knowledge of the Issuer:

    i.     all information (whether orally, in writing, electronic form or otherwise and whether provided by the Issuer) is or was true, accurate and complete in all material respects; and

    ii.     as of the Effective Date there are no material adverse change in any of the information so provided to the Purchaser during the conduct of its Diligence which was not disclosed.

(s)     None of the Issuer, any of its affiliates, or any person acting on any of their behalf has, directly or indirectly, solicited offers for or offered or sold the Securities by means of any form of general solicitation or general advertising within the meaning of Rule 502 under the Securities Act that would result in the offer and sale of the Securities requiring registration or in any manner involving a public offering within the meaning of Section 4(a)(2) of the Securities Act.

(t)     None of the Issuer, any of its affiliates, or any person acting on its or their behalf has, directly or indirectly, made offers or sales of any security, or solicited offers to buy, any security under circumstances that would require the registration of the Securities under the Securities Act.

(u)    The Issuer has no debts or contracts other than the issuance of the Notes pursuant to this and like Agreements, which give rise by their nature, whether direct or implied, to encumbrance of any of its assets, nor the shares of Theia Holdings A.

(v)    The Issuer has not and will not encumber the shares of Theia Holdings A other than by Notes pursuant to this and like Agreements, and the Issuer represents and warrants that such encumbrance will not exceed $500,000,000 (Five Hundred Million Dollars) in aggregate.

5.    <u>Securities Legends</u>.  The Securities shall be endorsed with the following legends:

(a)    THIS SECURED CONVERTIBLE PROMISSORY NOTE AND THE COMMON STOCK INTO WHICH IT IS CONVERTIBLE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT IN COMPLIANCE WITH RULE 144 UNDER SAID ACT OR AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL FOR THE HOLDER OF SUCH NOTE SATISFACTORY TO ISSUER THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE ACT.

(b)    Any legend required by any applicable state securities laws.

(c)    Any other legend which the board of directors of the Issuer deems necessary.

(d)    Theia Holdings A Inc. assets (FCC Ku and Ka band frequencies) will solely be used as collateral for the notes associated with this bridge loan

6.    <u>Tax Consequences</u>.  The Purchaser has reviewed with the Purchaser's own tax advisors the federal, state, local and foreign tax consequences of this investment and the transactions contemplated by this Agreement.  The Purchaser is relying solely on such advisors and not on any statements or representations of the Issuer or any of its agents.  The Purchaser understands that the Purchaser (and not the Issuer) shall be responsible for the Purchaser's own tax liability that may arise as a result of this investment or the transactions contemplated by this Agreement.  The Purchaser will not receive a 1099 on interest earned on any portion of this secured loan.

7.    <u>No Waiver</u>.  No failure or delay on the part of any party in exercising any right, power or privilege hereunder and no course of dealing between the Issuer and Purchaser shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

8.    <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that neither party may assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the other party.

9.     <u>Time is of the Essence</u>.  With regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence.

10.     <u>Entire Agreement</u>.  Except as otherwise provided herein, this Agreement sets forth the entire agreement and understanding among the parties hereto as to the subject matter hereof, and merges and supersedes all prior discussions, agreements, and understandings of every kind and nature among them.  No party shall be bound by any condition, definition, warranty or representation, other than as expressly set forth in this Agreement.  The parties hereto acknowledge that no other party, nor anyone else acting on his, her, or its behalf, has made any promise or representation regarding this Agreement except as expressly stated herein.

11.     <u>Invalidity</u>.  In the event that any one or more of the provisions of this Agreement shall, for any reason, be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement.

12.     <u>Governing Law and Venue</u>.  THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE.  Each of the parties hereto (a) submits to the non-exclusive general jurisdiction of any State of Delaware court sitting in the county of New Castle, the courts of the United States of America for the District of Delaware, and appellate courts from any of the foregoing and (b) consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same.

13.     **<u>WAIVER OF JURY TRIAL</u>. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT.  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS <u>SECTION 13</u>.**

14.     <u>Amendment</u>.  This Agreement may not be amended, modified, waived or terminated unless such is done in a writing signed by all parties hereto.

15.     <u>Construction of Agreement</u>.  This Agreement shall not be construed in favor of or against any party hereto on the basis that such party did or did not author this Agreement or any attachment related to it.  It is intended that this Agreement shall be comprehensive in nature and shall be construed liberally to effect its purposes.

16.     Headings.  Section headings used in this Agreement are for convenience only and shall not affect the construction.

17.     Notices.  All notices and/or the tender of any other document or item required herein, shall be valid only if sent by hand delivery, recognized overnight courier, or Certified United States Mail Return Receipt Requested to each party hereto, and only if they include notice by email, at the following addresses:

     (a)     Notices to Purchaser:

        NAME: Robert K. Chinn
        ADDRESS: 23 Egret Lane, Wakefield, RI 02879-5487

        Email:  rkchinn@cox.net

     (b)     Notices to the Issuer:

        Theia Group, Incorporated
        1455 Pennsylvania Avenue, Suite 800
        Washington, DC  20004
        Attn: Paul Carroll
        Email: pcarroll@theiagroupinc.com

Any party to this Agreement may change its address for notice purposes by notifying all other parties of its new notice address in writing by First Class, Certified, United States Mail.

18.     No Stockholder Rights.  Nothing contained in this Agreement shall be construed as conferring upon the Purchaser or any other person the right to vote or to consent or to receive notice as a stockholder in respect of meetings of stockholders for the election of directors of the Issuer or any other matters or any rights whatsoever as a stockholder of the Issuer; and no dividends or interest shall be payable or accrued in respect of the equity interests obtainable under the Note until, and only to the extent that, the Note shall have been converted. If the Issuer fail to register the converted securities for a period greater than one year from date of this signing with appropriate agencies then the Purchaser will be considered a stockholder and has the same rights and privileges of the founders until such date the securities are registered.  The Purchaser stock  holdings/number of stocks shall be per terms and conditions of Section 3 "Conversion" of Secured Promissory Note.

19.     Further Actions.  Each of party hereto shall execute and deliver such further agreements, documents, deeds, certificates and other instruments and shall take or cause to be taken such other actions as may reasonably be requested by any other party to carry out the provisions of this Agreement and consummate and make effective the transactions this Agreement contemplates.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first set forth above.

PURCHASER:

**THEIA GROUP, INCORPORATED**
a Delaware corporation

By: _____

Name: JAMES HICKEY

Title: COUNSEL

Name: ROBERT K. CHINN

## SCHEDULE I

| Purchaser | Principal Amount of Note |
|---|---|
| NAME: Robert K. Chinn | $100,000 |

**APPENDIX A**

**CONVERTIBLE PROMISSORY NOTE**

# EXHIBIT B

THIS SECURED CONVERTIBLE PROMISSORY NOTE AND THE COMMON STOCK INTO WHICH IT IS CONVERTIBLE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT IN COMPLIANCE WITH RULE 144 UNDER SAID ACT OR AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL FOR THE HOLDER OF SUCH NOTE SATISFACTORY TO ISSUER THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE ACT.

## SECURED CONVERTIBLE PROMISSORY NOTE

$100,000.00                                                                February 18, 2020

FOR VALUE RECEIVED, the undersigned THEIA GROUP, INCORPORATED, a Delaware corporation ("Issuer"), whose address is 1455 Pennsylvania Avenue, Suite 800, Washington, DC 20004, hereby promises to pay to Robert K. Chinn (the "Purchaser"), on the Maturity Date referred to below at such place as Purchaser may designate in writing, 2.0x (TWO times) the principal sum of **ONE HUNDRED THOUSAND DOLLARS ($100,000)** (the "Principal Amount"), or **TWO HUNDRED THOUSAND DOLLARS ($200,000)** (the "Repayment Amount"), on the terms and conditions as specified herein.

This Convertible Secured Promissory Note (this "Note") is issued effective as of the date first referred to above (the "Effective Date") pursuant to the Note Purchase Agreement, dated the Effective Date, by and among Issuer and Purchaser, and is subject to the provisions thereof. If any dispute arises between the terms of the Note Purchase Agreement and the terms of this Note, the terms of the Note Purchase Agreement shall prevail. Certain other note purchase agreements and notes (the "Other Notes") are being entered into substantially simultaneously with the Note Purchase Agreement and this Note with certain other purchasers (the "Other Purchasers").

This Note is subject to the following provisions, terms and conditions:

1.    Repayment Amount. The entire unpaid balance of the Repayment Amount hereof shall be due and payable on February 18, 2021 (the "Maturity Date"). Issuer may at any time and from time to time prepay the unpaid Repayment Amount of this Note (or any portion thereof), without premium (except as set forth in this Section 1) or penalty. All payments shall be made in U.S. dollars. All payments of the Repayment Amount, whether at the Maturity Date, upon an Event of Default (as defined below), or upon prepayment, shall be made such that the sum of all payments shall equal **TWO HUNDRED THOUSAND DOLLARS ($200,000)**.

2.    Security. In order to secure the prompt and complete payment and performance in full by Issuer of its obligations under this Note, Issuer hereby grants to Purchaser a continuing security interest in all of its right, title and interest in all property set forth in Schedule A with respect to Theia Holdings A, Inc., as attached hereto.

3.      Conversion.

(a)      At any time on or before the Maturity Date, in the event Issuer consummates a private placement of its common stock, par value $0.001 per share ("Common Stock"), to one or more unaffiliated third parties in a single transaction or a series of related transactions, for an aggregate offering amount of at least Two Billion Dollars ($2,000,000,000) or such lower amount as is agreed to by Issuer and Purchaser (any such financing, a "Qualified Financing") on or before the Maturity Date, upon the election of Purchaser provided in writing to Issuer, at the option of the Purchaser, a selected amount of the outstanding unpaid "Repayment Amount" of this Note, shall be converted into shares of the same class or series of securities sold in such Qualified Financing (the "Qualified Financing Securities") at (A) the price per share at which such Qualified Financing Securities are sold in the Qualified Financing *multiplied by* (B) 0.10 (the "Qualified Financing Conversion Price"). Issuer shall provide written notice of such Qualified Financing to Purchaser not later than ten (10) days prior to such Qualified Financing, and such conversion shall be consummated simultaneously with such Qualified Financing. The remainder of the balance shall remain in effect and due per terms and conditions set forth in Section 1 "Repayment Amount".

(b)      Upon conversion pursuant to this Section 3, Purchaser shall:

(i)      be entitled to receive the number of Qualified Financing Securities calculated by dividing (A) the unpaid Principal Amount of this Note on the date of conversion by (B) the Qualified Financing Conversion Price, rounded to the nearest whole share. Purchaser shall receive the same rights, privileges and protections, and shall be subject to the same obligations, as are applicable to the other purchasers of the Qualified Financing Securities in respect of such Qualified Financing Securities.

(ii)      surrender this Note when the remainder outstanding unpaid "Repayment Amount" of this Note is paid in full per terms and conditions set forth of Section 1, duly endorsed, at the principal office of Issuer. Issuer will, simultaneous with the surrender of this Note, issue and deliver to Purchaser, at such principal office, a certificate or certificates for the number of shares of Qualified Financing Securities or Common Stock to which Purchaser is entitled upon such conversion.

(c)      Upon conversion and payment in full of the remainder outstanding unpaid "Repayment Amount" set forth in Section 1 of this Note in accordance with the terms hereof, Issuer will be forever released from all of its obligations and liabilities under this Note with regard to the Principal Amount being converted, including, without limitation, the obligation to pay any premium or multiple with respect to such Principal Amount.

4.      Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" under this Note:

(a)      Issuer shall fail to pay when due the Repayment Amount of this Note on the Maturity Date (including any multiple provided for in Section 1 with respect to such amount);

(b)     Purchaser's security interest in the Collateral under this Note shall fail to constitute a first priority security interest (subject only to proportional treatment alongside the Other Purchasers' security interests under the Other Notes);

(c)     (i) Issuer shall cease to own 100% of the outstanding equity interests in Theia Holdings A, Inc. or (ii) Theia Holdings A, Inc. shall cease to own, free and clear of all encumbrances other than those arising under applicable law, the "Order and Authorization for NGSO-like satellite operation in the 10.7-12.7 GHz, 14.0-14.5 GHz, 17.8-18.6 GHz, 18.8-19.3 GHz, 27.5-28.35 GHz, 28.35-29.1 GHz, and 29.5-30.0 GHz frequency bands" as a result of transferring, disposing of or encumbering such license, without the prior written consent of Purchaser; or

(d)     Issuer (i) shall file for relief under any bankruptcy law or (ii) shall be the subject of an involuntary petition under any such law and such involuntary petition is not stayed or dismissed within 45 days after the date thereof.

5.     <u>Remedies</u>. Upon the occurrence of any Event of Default, the Repayment Amount (as provided for in <u>Section 1</u>) shall become due and payable.

6.     <u>No Waiver</u>. No failure or delay on the part of Purchaser in exercising any right, power or privilege hereunder and no course of dealing between Issuer and Purchaser shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

7.     <u>Waivers</u>. Except as otherwise expressly provided for herein, the makers, signers, sureties, and endorsers of this Note severally waive notice of acceptance of this Note, notice of extension of credit, demand, presentment, notice of presentment, notice of dishonor, notice of intent to demand or accelerate payment hereof, notice of demand, notice of acceleration, diligence in collecting, grace, notice and protest, and agree to one or more renewals or extensions for any period or periods of time, partial payments and releases or substitutions of security, in whole or in part, with or without notice, before or after maturity.

8.     <u>Limitation on Interest</u>. Notwithstanding any other provision of this Note, interest on the indebtedness evidenced by this Note is expressly limited so that in no contingency or event whatsoever, whether by acceleration of the maturity of this Note or otherwise, shall the interest contracted for, charged or received by Purchaser exceed the maximum non-usurious interest rate permitted by applicable law (the "<u>Maximum Rate</u>"). If from any circumstances whatsoever fulfillment of any provisions of this Note or of any other document evidencing, securing or pertaining to the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstances Purchaser shall ever receive anything of value as interest or deemed interest by applicable law under this Note or any other document evidencing, securing or pertaining to the indebtedness evidenced hereby or otherwise an amount that would exceed the Maximum Rate, such amount that would be excessive interest shall be applied to the reduction of the Repayment Amount owing under this Note or on account of any other indebtedness of Issuer to Purchaser, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the

3

Repayment Amount of this Note and such other indebtedness, such excess shall be refunded to Issuer. In determining whether or not the interest paid or payable with respect to any indebtedness of Issuer to Purchaser, under any specific contingency, exceeds the Maximum Rate, Issuer and Purchaser shall, to the maximum extent permitted by applicable law: (a) characterize any non-Principal Amount payment as an expense, fee, premium, or multiple on the Principal Amount hereof, rather than as interest, (b) exclude voluntary prepayments and the effects thereof, (c) amortize, prorate, allocate and spread the total amount of interest throughout the full term of such indebtedness so that the actual rate of interest on account of such indebtedness does not exceed the Maximum Rate, and/or (d) allocate interest between portions of such indebtedness, to the end that no such portion shall bear interest at a rate greater than the Maximum Rate. The terms and provisions of this paragraph shall control and supersede every other conflicting provision of this Note and all other agreements between Issuer and Purchaser.

9.    <u>Successors and Assigns</u>.  The provisions of this Note shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that neither party may assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the other party.

10.    <u>Time is of the Essence</u>.  With regard to all dates and time periods set forth or referred to in this Note, time is of the essence.

11.    <u>Entire Agreement</u>.  Except as otherwise provided herein, this Note sets forth the entire agreement and understanding among the parties hereto as to the subject matter hereof, and merges and supersedes all prior discussions, agreements, and understandings of every kind and nature among them.  No party shall be bound by any condition, definition, warranty or representation, other than as expressly set forth in this Note.  The parties hereto acknowledge that no other party, nor anyone else acting on his, her, or its behalf, has made any promise or representation regarding this Note except as expressly stated herein.

12.    <u>Invalidity</u>.  In the event that any one or more of the provisions of this Note shall, for any reason, be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note.

13.    <u>Governing Law and Venue</u>.    THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE.  Each of the parties hereto (a) submits to the non-exclusive general jurisdiction of any State of Delaware court sitting in the county of New Castle, the courts of the United States of America for the District of Delaware, and appellate courts from any of the foregoing and (b) consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same.

14.    <u>WAIVER OF JURY TRIAL</u>. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE. EACH

4

PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS NOTE, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 14.

15. <u>Amendment</u>. This Note may not be amended, modified, waived or terminated unless such is done in a writing signed by all parties hereto.

16. <u>Construction of Agreement</u>. This Note shall not be construed in favor of or against any party hereto on the basis that such party did or did not author this Note or any attachment related to it. It is intended that this Note shall be comprehensive in nature and shall be construed liberally to effect its purposes.

17. <u>Headings</u>. Section headings used in this Note are for convenience only and shall not affect the construction.

18. <u>Notices</u>. All notices and/or the tender of any other document or item required herein, shall be valid only if sent by hand delivery, recognized overnight courier, or Certified United States Mail Return Receipt Requested to each party hereto, and only if they include notice by email, at the following addresses:

    (a)    Notices to Purchaser:

           NAME: Robert K. Chinn
           ADDRESS: 23 Egret Lane, Wakefield, RI 02879-5487

           Email:  rkchinn@cox.net

    (b)    Notices to Issuer:

           Theia Group, Incorporated
           1455 Pennsylvania Avenue, Suite 800
           Washington, DC  20004
           Attn: Paul Carroll
           Email: pcarroll@theiagroupinc.com

Any party to this Note may change its address for notice purposes by notifying all other parties of its new notice address in writing by First Class, Certified, United States Mail.

19. <u>No Stockholder Rights</u>. Nothing contained in this Note shall be construed as conferring upon Purchaser or any other person the right to vote or to consent or to receive notice as a stockholder in respect of meetings of stockholders for the election of directors of Issuer or any other matters or any rights whatsoever as a stockholder of Issuer; and no dividends or interest shall be payable or accrued in respect of the equity interests obtainable hereunder until, and only to the extent that, this Note shall have been converted. If the Issuer fails to register the converted

securities for a period greater than one year from date of this signing with appropriate agencies then the Purchaser will be considered a stockholder and has the same rights and privileges of the founders until such date the securities are registered.  The Purchaser stock holdings/number of stocks shall be per terms and conditions of Section 3 "Conversion" of the Secured Promissory Note.

20.  <u>Further Actions</u>.  Each of party hereto shall execute and deliver such further agreements, documents, deeds, certificates and other instruments and shall take or cause to be taken such other actions as may reasonably be requested by any other party to carry out the provisions of this Note and consummate and make effective the transactions this Note contemplates.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned has executed this Note as of the Effective Date.

THEIA GROUP, INCORPORATED

By: _____

Name: _____

Title: _____

Acknowledged and Agreed:

_____
ROBERT K. CHINN

Schedule A

All of Issuer's right, title and interest in the following property, whether now owned or hereafter acquired (collectively, the "Collateral"):

    (a) all shares of capital stock or other ownership interests in Theia Holdings A, Inc. (the "Company") (including the ownership interest identified on Schedule 1), including as to all of the foregoing, without limitation, the right to receive all proceeds, dividends or distributions of income, profits, surplus or other payment or compensation by way of income or liquidating distributions (in cash, in kind or other property) from the Company (all of the foregoing referred to as the "Ownership Interest");

    (b) all General Intangibles (including Payment Intangibles) constituting the Ownership Interest;

    (c) all books and records pertaining to the Collateral; and

    (d) to the extent not otherwise included, all Proceeds and products of any and all of the foregoing, all Supporting Obligations in respect of the foregoing and all collateral security and guarantees given by any person with respect to any of the foregoing.

The terms "General Intangibles", "Payment Intangibles", and "Supporting Obligations" are as defined in the Uniform Commercial Code as from time to time in effect in the Commonwealth of Pennsylvania.

Schedule 1

OWNERSHIP INTEREST IN
THEIA HOLDINGS A, INC

Shareholder                                    Ownership Interest in Company
Theia Group, Incorporated                                  100%